The opinion of the court was delivered by
DeBlanc, J.
In this case, and for the purposes of this trial, we must consider as true the allegations of the petition which we .have before us. What do they disclose ? That — on or about the 17th of July 1878 — one George A. Wilson died in Grant parish at the residence of Warren and William Price. That — when Wilson died — he had, in cash, twenty-nine hundred and eighty dollars, which were secretly and fraudulently taken by William Price, his son Warren, and one Henry Holburn, who — with the very money thus taken — purchased more than one thousand dollars worth of goods, found and sequestered in their possession.
The curator of Wilson’s estate claims those goods as belonging to said estate, and swore that he feared that those parties who — before and up to the death of Wilson — were too poor to pay in cash the bare necessaries of life — would, during the pendency of this suit, conceal, part with or dispose of said goods.
On these allegations he prayed for and obtained an order commanding the sequestration-^-not only of the goods — but also of a crop of growing corn and cotton. The crop was released on bond, and — it is evident — not one of the curator’s allegations authorized its sequestration.
Defendant’s counsel moved to dissolve the sequestration, on the grounds:
1. That the affidavit is defective, vague and uncertain, unfounded in fact and in law.
2. That plaintiff did not swear to the ownership of the sequestered property, or that he has — on the same — a lien, privilege or mortgage.
The sequestration was dissolved and plaintiff has appealed.
The affidavit attached to the petition may be unfounded in fact; but the curator has sworn to every fact which he has alleged, one of which is that the goods belong to the succession of Wilson. The prayer of his petition is not as full as it might have been : it — however—leaves no doubt that he is suing to recover what may be left of the money alleged to have been stolen from the succession, and for the possession of the goods purchased by the suspected thieves and paid for by them with a part of the stolen money.
If — as charged — defendants did steal those funds ; if — with those funds — they paid the price of the goods, have they acquired, as to the goods thus paid for, a title sanctioned by any law, and which can justly be recognized by any court ? Most assuredly not. If that title, which fias passed from the merchants who sold, has not vested'in the thieves *359 who bought, who can have a higher right to the goods, and by whatever name that right may be called, than the despoiled succession ?
Plaintiff’s allegations — we are told — are based upon mere suspicion ? If so, why did defendants close the door, by their motion, against the evidence which might have dispelled that suspicion ? Why did they admit, even for the purposes of the trial of that motion, that — at his death — Wilson had the amount of money claimed against them ; that they took it secretly and fraudulently, and that it was with that money that they purchased the sequestered goods ? It was their right to risk that admission ; but the exercise of that right was and still is — for the purposes of this trial — nothing less than a bold confession that they have committed the crime charged against them.
The chosen depositary and attorney-in-fact are each bound to restore to the depositor and principal, even that which they have unduly received ; and it cannot be that thieves are 'entitled to a favor or privilege which would be denied to confidential agents. That an action lies against them, for the recovery of the money stolen, is indisputable ; but that action would be as barren as insufficient, when — as in this instance —the fruits of the alleged crime appear to be their all, or at least all that can be reached by legal process.
C. C. 2964 (2935) — 2962, (2933) — 3005 (2974).
“L’intérét public et la morale — said Troplong — veulent que l’auteur d’une mauvaise action n’en retire pas de profits qui l’encouragent a mal faire ; et, dans le doute, il vaut toujours mieux próférer l’interpretation la plus défavorable á eelui qui a offense l’honnéteté publique, et la mieux appropriée a sa punition.”
Troplong, du Mandat, p. 409.
When — as remarked by Mr. Story — the profits are made by a violation of duty, it would be obviously unjust to allow the agent (and much more unjust to allow a thief,) to reap the fruits of his own misconduct; and as held by this court — when there has been such an appropriation of the trust property that it can be clearly identified, the change which it has undergone in point of form, should not be permitted to frustrate the pursuit of the principal, and — at his expense — put a profit in the agent’s pocket.
Story on Agency, 207. 4 A. 415.
In New York a majority of the judges of the Court of Appeals held “ that it is an elementary principle in the law of all civilized communities, that no man can be deprived of his property, except by his own voluntary act, or by operation of law; that a wilful wrongdoer acquires no property in the goods of another, either by the wrongful taking or by any change wrought in them by his labor or skill, however great that change may be.”
*360 The same principle is to be found in the Digest of Justinian. “If .anyone shall make wine with my grapes, oil with my olives, or garments with my wool, knowing that they are not his own, he shall be compelled by action to produce the said wine, oil or garments.”
In bis Commentaries; the late Chancellor Kent declared that the English law will not allow a man to give a title to the property of another upon the principle of accession, if he took the other’s property wilfully as a trespasser and that it was settled as early as the time of the Tear Book, that whatever alterations of form any property had undergone, the owner might seize it in its new shape, if he could prove the identity of the original materials.”
Relying on those authorities, the New York court decided, with but two dissenting opinions, that where a quantity of corn was taken from the owner by a wilful trespasser and converted by him into whisky, the whisky belonged to the owner of the corn. It is manifest that any other conclusion would eradicate the ancient and respectable distinction established by the pronouns “ mine” and “ thine.”
3 N. Y. Comstock’s Reports, p. 379.
In “Newton vs. Porter,” the Supreme Court of New York said : “It was the felons who changed the stolen bonds into money, and — as found by the judge — the same money was changed into mortgage and notes.” There is no dispute about the following it and its identity, or of its conversion into the obligations in question. It was no bona fide purchaser that wrought this change; and some of these obligations came into the hands of the defendants, or some of them, with the knowledge of the larceny. The question before the court was, whether the proceeds of this stolen property could be recovered, by plaintiff, of the parties so holding it. The learned judge who found the facts, thought there was no trust, and because there was no trust he dismissed the plaintiff’s bill. This was clearly error. By every principle of natural equity and justice, the defendants were bound to hand over the moneys and obligations which were the conceded avails of the stolen bonds. * * It would be monstrous, indeed, if our law was such that, when the felon is expert enough to place his unrighteous gains in the hands of another, they can not be followed and obtained, and this because the holder can not be regarded as a trustee. * * * We have no such ungracious doctrine incorporated in our jurisprudence. * * * The owner of stolen property, or the avails thereof, clearly traced and proved, can recover it by any proper action, in whose hands soever it may be found ; and no law is to be found that throws around the thief its technical protection.
5th Lansing’s Report, p. 421.
One, whose money has been stolen, and used by the thief to pay the price of property, which is found in the thief’s possession, can — at his *361 option — sue either to recover the money, or the property. As to third parties, he may lose his title, but — under no circumstances — can his title be considered as inferior to the insolent pretension of the rascal by whom he was robbed.
The curator of Wilson’s estate has sued to recover the money and the goods ; and defendants who — by their motion to dissolve on the face of the papers — have tacitly confessed the charge proffered against them, and tacitly admitted that they have no right to the sequestered goods, or to their possession, cannot, legally, control the title of the succession to said goods, and complain with bad grace of the form of the proceeding by which the curator seeks to wrest from them that which — by an inference authorized by their own course — belongs to the presumed victim of their presumed crime.
The facts alleged and sworn to by the curator do disclose a sufficient cause for the issuance of the writ of sequestration, and — as to that cause — the law, by implication, -if not otherwise, is not absolutely silent. Were it silent, this is — manifestly—one of the few instances when an appeal would have to be made to natural law and reason, to baffle and to defeat a criminal and infamous speculation.
Sequestration — it is said — is a harsh, a rigorous remedy, and mere grounds of suspicion — when extremely slight — do not authorize the issuance of the writ. This we admit; büt we do not consider as slight the suspicion which arises from the willing and tacit admission of a party; nor can we consider as rigorous and harsh the only remedy which can effectually be resorted to, by one who has been robbed of his purse, to prevent the thief from disposing — to his prejudice — of the property purchased with stolen money.
Those who find that which has been lost, or that which — during a storm and to save a vessel — is cast into the water, are bound to restore it to the lawful owner. The possession of those who steal from a dead man’s purse is far less respectable than the possession of those who find on a public route or on the bosom of the sea. To the stolen money, or to whatever they may buy with that money, they — themselves—can acquire no title, not even by prescription. C. C. 3424 (3387).
In the interest of defendants themselves, for it may be that they are not guilty ; and-^if they are guilty — in the interest of society and justice, the charge made against them by the curator, must be investigated.
It is — therefore—ordered, adjudged and decreed that the judgment appealed from is annulled, avoided and reversed, and this cause remanded to the lower court to be proceeded with according to the views herein expressed and according to law ; the. costs of the appeal to be paid by defendants.